# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

LESLIE WILSON,                          :

     Plaintiff,                     :
                               Case No. 3:14cv00085

 vs.                                    :

                               District Judge Walter Herbert Rice

CAROLYN W. COLVIN,                       :   Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                 :

     Defendant.                      :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

      Plaintiff Leslie Wilson brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits and Supplemental Security Income.  She asserts here, as she did before the administration, that she has been under a benefits-qualifying disability – starting on February 24, 2010[2] – due to lumbar radiculopathy, nerve damage, and a herniated disk in her neck.

      The case is presently before the Court upon Plaintiff's Statement of Errors (Doc.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Plaintiff previously filed an application for SSI on November 8, 2006, alleging disability since January 9, 2006.  The application was denied in a decision issued on February 23, 2010.  Accordingly, the earliest date Plaintiff can be found disabled would be February 24, 2010, the day after the date of the prior hearing decision denying disability.  (*PageID#* 51).

#10), the Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply (Doc.

#17), the administrative record (Docs. ##6, 7), and the record as a whole.

## II.   Background

### A.   Plaintiff's Testimony

Plaintiff was 40 years old on her alleged disability onset date, placing her in the

category of a "younger person" for purposes of resolving her claims for DIB and SSI.  *See*

20 C.F.R. § 404.1563(c).  She has a high school education.  Her past relevant employment

includes work as a motor vehicle assembler, mail sorter, teacher's aide, and home health

aide.

At her administrative hearing in August 2012, Plaintiff testified she is 5' 4" tall and

weighs approximately 150 pounds.  (*PageID#* 81).  Plaintiff lives in a two-story house

with her two children, ages 23 and 15.  Her parents bought the house for her.  Plaintiff was

driven to the hearing by her mother.  Plaintiff used to work for the post office but the

position was eliminated when the post office relocated.

Plaintiff testified she has constant pain in her neck and back due to being involved

in a car accident.  She indicated she also has numbness and tremors in her right hand and

numbness in her leg.  She has pain and pressure in her head, which blurs her vision.

(*PageID#* 83).

Plaintiff indicated she can walk to her mailbox and around her house, but is unable

to walk up and down the street or do any other strenuous activity.  Plaintiff believes she

can sit for about 15 to 20 minutes before it becomes "unbearable."  (*PageID#* 85).  She can

2

stand for 20 to 30 minutes.  Plaintiff tries to do dishes and sweep around the house but normally her children take over for her.  Plaintiff can go to a convenience store for a small amount of groceries, however, her son or oldest daughter will do the "big grocery shopping."  (*PageID#* 85).  Plaintiff is able to drive and can dress herself, but her daughter does her hair because it is difficult to put her arms above her head.

On a typical day, she drives her daughter to school, comes home, eats yogurt, sometimes visits her mother, and then picks up her daughter from school.  Sometimes she cooks dinner, such as spaghetti or hot dogs, but her son also cooks.

Plaintiff testified she can drive for about 30 to 45 minutes, "at the most."  (*PageID#* 89).  Driving causes her difficulties, such as blurry vision and weakness in her arm and leg.  She drives with her shoes off because she "can't always feel the pedal."  (*Id.*).  Plaintiff estimates she can only lift 5 to 10 pounds.

### B. <u>Medical Evidence</u>

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.  The Commissioner likewise defers to the ALJ's factual recitation.

### III. <u>"Disability" Defined and the ALJ's Decision</u>

3

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[3] 42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Amelia G. Lombardo applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "degenerative disk disease with the residuals of a cervical fusion; degenerative disk disease of the thoracic and lumbrosacral spine; mild coronary artery disease; osteoarthritis; and depression." (*PageID#* 54).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listings 1.04, 4.00, and 12.04. (*PageID#* 56-57).

---

[3] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity[4]:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  Giving the claimant the full benefit of the doubt with regard to her allegations and subjective complaints, it is found that she requires the following additional nonexertional restrictions: the opportunity to briefly change position between sitting and standing every thirty minutes; no climbing of ladders, ropes or scaffolds; no pushing or pulling with the right upper extremity; no repetitive use of foot controls; no repetitive twisting or bending at the waist; no work about shoulder level; no exposure to unprotected heights or hazardous machinery; unskilled work as defined in the Dictionary of Occupational Titles; low stress work, which is defined as no assembly line production quotas.

(*PageID#* 57).  The ALJ also concluded at Step 4 that Plaintiff's "allegations and subjective complaints lack credibility to the extent that they purport to describe a condition of disability for Social Security purposes." (*PageID#* 61).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.  <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

---

[4] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.    Discussion**

   **A.    Plaintiff's Contentions**

Plaintiff contends the ALJ erred in rejecting the opinion of her treating

6

neurosurgeon, Dr. Scott West, D.O.  She also argues the ALJ failed to weigh the opinions

of reviewing consultants Drs. Nick Albert, M.D., and Willa Caldwell, M.D., as well as

consulting psychological examiner Dr. Giovanni M. Bonds, Ph.D.  Plaintiff further

contends the ALJ should have weighed the opinion of her former treating primary care

physician, Dr. Carl F. Hoyng, D.O.  Finally, Plaintiff asserts the ALJ erred in her limited

analysis and consideration of her right knee impairment.  (Docs. ##10 and 17).

### B.     <u>Treating Medical Source Opinions</u>

The Sixth Circuit has held that claimants are "entitled to receive good reasons for

the weight accorded their treating sources independent of their substantive right to receive

disability benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007);

*see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson*, 378 at 544.  "[T]he

procedural requirement exists, in part, for claimants to understand why the administrative

bureaucracy deems them not disabled when physicians are telling them that they are."

*Smith*, 482 F.3d at 876; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir.

2013).

Generally, "the opinions of treating physicians are entitled to controlling weight."

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), citing *Walters v. Comm'r

of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997).  However, "[i]t is an error to give an

opinion controlling weight simply because it is the opinion of a treating source if it is not

well-supported by medically acceptable clinical and laboratory diagnostic techniques or if

it is inconsistent with the other substantial evidence in the case record.'"  *Blakley*, 582

F.3d at 406, quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  A treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record.  *Wilson*, 378 F.3d at 546.

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(e).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### C.    Analysis

Plaintiff first contends that the ALJ erred in rejecting the opinion of her treating neurosurgeon, Dr. West.  Plaintiff began treating with Dr. West in July 2009, when she consulted with him upon referral from her primary care physician Dr. Hoyng.  (*PageID##* 954-55).  Dr. West performed a cervical spine discectomy and fusion on Plaintiff in November 2010, and continued to treat her until at least July 2012.  (*PageID#* 1075, 1373-74, 1426-27, 1604-07).

In his November 4, 2011 opinion, Dr. West identified a number of clinical findings, including neuro-anatomic distribution of pain, limitation of motion of the spine, sensory or reflex loss, and lumbar spinal stenosis. (*PageID#* 1428). He noted that MRIs had been performed. (*Id.*). Dr. West opined that he believed Plaintiff could only sit for 15 minutes at a time, stand for 15 minutes at a time, work for 4 to 6 hours per day, occasionally lift 10 pounds, and frequently lift 5 pounds. (*PageID#* 1429). He opined Plaintiff could, "to a limited extent," do the following: rotate neck to the right, rotate neck to the left, elevate chin, and bring chin to neck. (*Id.*).

The ALJ correctly identified Dr. West as Plaintiff's treating neurosurgeon. (*PageID#* 58). As to Dr. West's opinion that Plaintiff is disabled/unemployable, however, the ALJ determined it should not be given controlling or deferential weight, finding as follows:

> The neurosurgeon's treatment notes reflect that the claimant did well postoperatively. Despite her later pain complaints, diagnostic imaging studies did not support the need for surgical intervention. When she complained about pain during physical therapy, he said "The only problem I can attribute to her cervical spine is when they do tuck her chin, she does get some numbness the [sic] in the back of her head" (Exhibit B134F/1). In completing the attorney-generated questionnaire, the neurosurgeon provided no support for his opinion that the claimant would only be able to work six hours a day. His opinion that the claimant would be limited to work at the sedentary level is afforded some weight, though his opinion that she would only be able to work for six hours a day is not well supported by the overall medical record and is afforded little weight.

(*PageID#* 59). A review of the record indicates the ALJ's findings are not supported by substantial evidence and must be reversed. First, the ALJ relies significantly upon the finding that Plaintiff "did well postoperatively," yet fails to identify support for, or

otherwise further explain, this vague finding.  The Commissioner cites, in part, to Dr. West's notes regarding Plaintiff's surgery and argues they "reflected that Plaintiff did well postoperatively after her November 2010 cervical spine discectomy and fusion" (Doc. #14, *PageID#* 1697, citing *PageID##* 58, 1056-60), yet the notes referenced are from the days immediately after surgery and simply tend to indicate Plaintiff "tolerated the procedure well without any problem." (PageID# 1060).  A review of the longitudinal record, however, indicates Plaintiff continued to complain of pain to Dr. West.

In June 2011, Plaintiff reported to Dr. West she had chronic neck and right extremity pain, as well as tremors in her right arm.  (*PageID#* 1373).  In October 2011, Plaintiff again complained to Dr. West regarding her low back pain, which radiated into her lower extremities.  (*PageID#* 1426).  She reported difficulty walking and driving, complained of bilateral leg weakness, and numbness involving her feet.  (*Id.*).  Dr. West noted palpable tenderness in her lower lumbar region, range of motion testing showed flexion limited to 45 degrees, and side bending was limited to 10 degrees bilaterally.  (*Id.*). He recommended conservative care and pain management instead of any additional surgical intervention, in part, because Plaintiff's disc herniation was more central in location.  (*PageID#* 1427).  A cervical MRI performed in March 2011 indicated ongoing discogenic disease with narrowing at both the C4-C5 and C6-C7 disc spaces contacting Plaintiff's nerve roots and spinal cord.  (*PageID#* 1242-43).  Another cervical MRI performed in December 2011 indicated re-demonstration of multilevel discogenic disease most pronounced at C3/4, C4/5, and C5/6.  There was also a slight increase of discogenic

changes at C3/4.  (*PageID##* 1430-31).  An MRI in July 2012 indicated continued

degenerative pathology throughout her cervical vetebrae.  (*PageID#* 1648-49).  In March,

June, and July 2012, Plaintiff met with Dr. West to see if there were any additional

surgical possibilities.  (*PageID#* 1604-07).  Dr. West recommended additional physical

therapy for her neck and upper extremities, yet her problems have persisted.  (*PageID#*

1577-86).  Accordingly, the ALJ's finding that Plaintiff "did well postoperatively" is

ambiguous and lacks substantial evidence in the record.

The ALJ also improperly concluded that the imaging studies relied upon by Dr.

West did not support Dr. West's opinion because they "did not support the need for

surgical intervention."  (*PageID#* 59).  As Plaintiff correctly notes, however, "there is no

requirement that spinal degeneration be operable to be capable of producing disabling

pain.  (Tr. 58)."  (*Id.*).  *See, e.g., O'Nan v. Sec'y of Health & Human Servs.*, 842 F.2d 332,

*8-9 (6th Cir. 1988) ("Here the ALJ evidently discounted the physicians' findings on the

basis of his own observations and skeptical view of nonsurgical treatment. . . . There can

be no question that [plaintiff] had a bad back, and we are not prepared to say that she had

to submit to the surgeon's knife in order to prove it.").  The ALJ's finding is particularly

troubling given that Plaintiff had already undergone two cervical spinal fusions in an effort

to help alleviate her pain.  (*PageID#* 448-54, 1056-60).  Moreover, Dr. West did not

foreclose the possibility of further surgery if Plaintiff's neck pain significantly worsens.

(*PageID#* 1604).  Despite the ALJ's apparent belief otherwise, Dr. West's decision not to

presently recommend a third back surgery does not somehow detract from his opinion or

Plaintiff's reports of pain.  Dr. West did not base his decision not to recommend surgery on inconsistencies between Plaintiff's reports of pain and the medical imaging results, but rather because of the location of the disc herniation and level of nerve root compression evidenced.  (*PageID#* 1427).  In addition, Dr. West believed continued treatment for Plaintiff was recommended, namely that "she should continue with conservative care and pain management."  (*Id.*).

For these reasons, the ALJ's findings regarding Dr. West's opinions are not supported by substantial evidence and the decision must be reversed.[5]

## VI.  Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F3d at 746.  Remand is warranted for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

---

[5] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions, including other arguments as to the ALJ's weighing of medical source opinions, is presently unwarranted.  Nonetheless, the Commissioner is encouraged to consider these issues on remand.

reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence four of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041.  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak.  *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above.  On remand, the ALJ should be directed to: (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB and SSI during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff Leslie Wilson
        was under a "disability" within the meaning of the Social
        Security Act;

3.      This case be remanded to the Commissioner and the
        Administrative Law Judge under Sentence Four of 42 U.S.C.
        § 405(g) for further consideration consistent with this Report;
        and

4.      The case be terminated on the docket of this Court.

May 6, 2015

                                        s/Sharon L. Ovington
                                    Sharon L. Ovington
                                Chief United States Magistrate Judge

14

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947,